USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROSELINE ENYIA,

  Plaintiff,

v.

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, *et al.*,

  Defendants.

---

No. 16-CV-6344 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge

Plaintiff Roseline Enyia, a registered nurse employed by Defendant New York City Health and Hospitals Corporation ("H+H"), brings this action against H+H, Harlem Hospital Center ("Harlem Hospital"), and Michelle Blackburn and Nancy Cook in their official capacities, alleging gender discrimination and retaliation in violation of federal, state, and city law, and failure to accommodate in violation of state and city law. Defendants now move for summary judgment on all of Plaintiff's claims. For the following reasons, the motion is granted.

## BACKGROUND

### I.      Factual Background

The following facts are principally taken from Defendants' 56.1 statement and Plaintiff's counterstatement, as well as the parties' other submissions in connection with Defendants' motion for summary judgment.   These facts are undisputed unless noted otherwise.

Plaintiff Roseline Enyia is currently employed as a registered nurse at H+H's Harlem Hospital location in Manhattan, where she has worked since October 1999. Defs.' 56.1 Statement ¶ 1. Up until 2010, Enyia worked in the "psych inpatient 8K", "psych inpatient 7K", and "detox"

units at Harlem Hospital. *Id.* ¶¶ 12-14. Her duties included, among other things, "assessment, admission, discharge, medication administration, monitoring of patients and safety." *Id.* ¶ 13. During this time, Enyia was first supervised by "Ms. Fahadoh," and then "Ms. Tobias," with whom she had a "normal [working] relationship." *Id.* ¶¶ 14-15.

In 2010, Michelle Blackburn was appointed Harlem Hospital's Associate Director of Nursing. *Id.* ¶ 19. On Plaintiff's October 18, 2010 performance evaluation, Enyia received an overall "satisfactory" rating. *Id.* ¶ 16. Nevertheless, Plaintiff's work performance was marked as "marginal" in several categories. *Id.* ¶ 16-17, Ex. D. Specifically, the evaluation stated that Plaintiff "has to show more initiative" and "[n]eeds to be less confrontational" with colleagues and patients. *Id.* ¶ 18, Ex. D. Although the form was officially prepared by Tobias, Plaintiff contends that it was actually written by Blackburn. *Id.* ¶ 20.

Shortly thereafter, at Blackburn's direction, Plaintiff was transferred to a psych inpatient unit on the tenth floor. *See id.* ¶ 23. According to Blackburn, Plaintiff was transferred to a different unit because doctors and other staff had complained that they were having difficulty working with her. *See id.* ¶¶ 25-26. Plaintiff disputes that such complaints were ever made. *See* Pl.'s 56.1 Counterstatement ¶¶ 25-26.

On October 17, 2011, Blackburn prepared Plaintiff's performance evaluation. *See* Dkt. 67, Ex. G. Blackburn rated Plaintiff as "satisfactory" in the majority of categories, but she also rated Plaintiff as "marginal" and "unsatisfactory" across several metrics. *Id.* As justification for the unsatisfactory ratings, Blackburn explained that "[Plaintiff's] communication skills are poor[,]" [she is] [a]rgumentative with peers and management," and that Plaintiff fails to update care plans "to reflect current clinical care needs of patients." *Id.* Following this evaluation, Plaintiff was

assigned an "Action Plan for Improvement" to address "communication, documentation, time and attendance." *Id.*, Ex. H.

On December 13, 2011, Blackburn rated Plaintiff's overall yearly performance as "marginal." Defs.' 56.1 Statement ¶ 28. In her evaluation, Blackburn again noted that Plaintiff's "communication skills are poor" and that she is "argumentative with peers and management." *Id.* ¶ 31. In response, Plaintiff submitted a lengthy rebuttal, noting that "she never received [a] marginal evaluation since [she] started working in the hospital since 1999." *Id.*

Plaintiff was subsequently transferred from the tenth-floor inpatient unit to the Comprehensive Psychiatric Evaluation Program ("CPEP"). *Id.* ¶ 37. Blackburn testified that Plaintiff was transferred to CPEP because "she was, again, having conflicts with the team, found to be loud, difficult to work with, [and was] argumentative." *Id.* ¶ 38. According to Plaintiff, Blackburn's assertions were pretextual. Plaintiff instead alleges that, in once again transferring her to a different unit, Blackburn had retaliated against her for her "complaints of unsafe situations in the workplace and dangerous situations for the patient and staff," which, according to Enyia, she began to voice "around 2010 or thereabouts." Pl.'s 56.1 Counterstatement ¶ 38.

On January 17, 2012, Blackburn again prepared Plaintiff's performance evaluation. *See* Dkt. 67, Ex. I. Blackburn once more rated Plaintiff's work as mostly "satisfactory", save for five metrics where Blackburn rated Plaintiff's work performance as "marginal" or "unsatisfactory." *Id.* In particular, Blackburn reiterated that Plaintiff's communication skills are "poor" and that "she remains argumentative with peers and management." *Id.* As a result of this, Defendants state that Plaintiff was given another "Action Plan for Improvement," although Enyia denies ever receiving this document. Pl.'s 56.1 Counterstatement ¶ 32.

On April 17, 2012, Plaintiff complained to Blackburn of an unfair work assignment and bullying from the head nurse, "Mr. Howell." *See* Dkt. 67, Ex. J (Harlem Hospital Notice and Statement of Charges, August 7, 2012 Email from Michele Blackburn). It is not clear whether Blackburn did anything in response. On June 11, 2012, Blackburn received complaints from Mr. Howell and another employee, Monica Stinson, claiming that Plaintiff refused to administer care to a patient. *See id.* As a result, H+H charged Plaintiff with five counts of professional misconduct. *See id.* These disciplinary charges consisted of: (1) "disruptive and unacceptable behavior"; (2) disruptive behavior regarding patient safety; (3) insubordination; (4) "misconduct[/]dereliction of duty"; and (5) "conduct unbecoming of a [Harlem Hospital] employee." *Id.* Based on these charges, it was recommended by the grievance officer that Plaintiff should be suspended from her job for twenty days. Pl.'s 56.1 Counterstatement *Id.* ¶ 41. At her deposition, Plaintiff testified that Blackburn fabricated these charges as part of her "plot" to "ruin [Plaintiff's] career" based on Enyia's continued complaints about patient safety. ¶ 39.

Beginning in August 2012, Plaintiff began submitting written "Protests of Assignments," which are statements in which staff members may "lodge complaints to management concerning what the staff member views as unsafe working conditions." ¶ 96. Among other things, Enyia complained that there was an "inadequate number of qualified staff" and that her "case load [was] too high," putting patient safety at risk. *Id.* ¶¶ 97-98.

On October 31, 2014, Plaintiff signed a stipulation of settlement regarding the 2012 disciplinary charges. *See* Dkt. 67, Ex. O. Under this stipulation's five terms, H+H "agree[d] to expunge" Plaintiff's suspension and "restore to [her] all monies not paid [to Plaintiff] during" her suspension period. *Id.* In exchange, Plaintiff agreed to release "[H+H] and the facility [Harlem

Hospital] from any and all claims, whether at law, in equity, or in any proceeding ... in the future in connection with the underlying dispute." *Id.*

On March 3, 2014, Nancy Cook was made head nurse of Harlem Hospital's Psychiatry Department. Defs.' 56.1 Statement ¶ 53. In this role, Cook became Plaintiff's immediate supervisor. *Id.*

In September 2014, Cook wrote an internal memorandum documenting a meeting she had with Plaintiff to discuss her unprofessionalism and incidents that threatened patient safety. *See* Dkt. 67, Ex. ZZ. At the meeting, Cook described: (1) multiple complaints she had received from staff regarding Plaintiff's negative attitude; (2) a resident's complaint that Plaintiff refused to accept a urine specimen from her assigned patient; and (3) that she overheard Enyia state that "we don't treat crack heads" with regard to a patient struggling with substance abuse. *Id.* Cook also documented an instance where Enyia improperly re-inserted a needle into an individual. *See id.* In response, Plaintiff claims that these assertions were fabricated. *See* Pl.'s 56.1 Counterstatement ¶ 61. Plaintiff also testified, at her deposition, that although Cook witnessed Leslie Gertz, a similarly situated male employee, reinsert a needle into a patient, Cook did not discipline him. *See* Enyia Deposition, Dkt. 77, Ex. 2 at 114:8-13.

On November 5, 2014, Joselyn Reyes, a CPEP Clerical Associate, emailed Cook to complain about Plaintiff. Dkt. 67, Ex. DDD. Reyes described Enyia's lack of professionalism as "a hostile and arrogant ... attempt" "to intimidate colleagues." *Id.* Reyes described two incidents in particular. The first involved Enyia's alleged attempt to tell a food delivery man to serve food to patients himself, thereby violating hospital protocol. *See id.* The second apparently occurred between Plaintiff and Helen Howell, a CPEP nurse. *See id.* According to Reyes, Enyia yelled at

Howell for not notifying her about a work reassignment. *Id.* On December 17, 2014, Plaintiff was brought up on disciplinary charges based on these incidents, among others. *See id.*, Ex. X.

According to Enyia, on February 15, 2015, she verbally complained to Cook and Blackburn that she was being discriminated against. *See* Dkt. 77, Ex. 2, 124-125. Although Plaintiff does not recall whether she complained about gender discrimination specifically on that date, she maintains that at some point she "told [Cook and Blackburn] verbally" that she was being bullied and discriminated against because of her gender. *Id.* at 125:15-22

On March 2, 2015, Cook prepared Plaintiff's performance evaluation, which rated Plaintiff as "satisfactory" in nearly all categories. Dkt. 67, Ex. V. Consistent with prior evaluations, Plaintiff received two "marginal" ratings and three "unsatisfactory" ratings for her job performance. *Id.* Specifically, Cook noted that Plaintiff "[c]ontinues to have poor communication skills, [and] continues to be argumentative with peers and [other] members of the interdisciplinary team." *Id.* In Plaintiff's rebuttal to her evaluation, she wrote: "I feel that Ms. Cook's vindictiveness and punitive [attitude] toward[s] me has clouded her judgment" and that the "evaluation is bias[ed], unfair and punitive." *Id.*

Plaintiff asserts that, on March 4, 2015, she submitted a written complaint to "Defendants and Human Resources." Pl.'s 56.1 Counterstatement ¶ 172. In this complaint, Plaintiff claimed that Defendants discriminated against her, targeted her, and harassed her through intimidation and bullying. *See id.* It is unclear how Defendants responded to this complaint. On May 5, 2015, Reyes again emailed Cook regarding Enyia's workplace behavior. Dkt. 67, Ex. FFF. In this email, Reyes claimed that Plaintiff had interrupted her work in order to "bully[]" her and to make her feel inferior. *Id.*

On May 12, 2015, Cook reported that Enyia had an unpleasant conversation with her over the phone, leading Cook to hang up on her. Dkt. 67, Ex DD. According to Cook, Enyia confronted her later that day. *See id.* When Cook asked Enyia what she wanted, Plaintiff cryptically responded: "you'll get it from my stomach." *Id.* This led Cook to call the hospital police, who escorted Enyia from the premises. *Id.* Plaintiff contends that Cook's accusations were fabricated, and that such "accusations were eventually 'thrown out.'" Pl.'s 56.1 Counterstatement ¶ 78.

On July 25, 2015, Plaintiff reportedly suffered a work-related injury to her right shoulder and pinky finger while attempting to break up a fight between two patients. *See* Pl.'s 56.1 Counterstatement ¶ 83. Prior to returning to work, Enyia submitted documentation from her healthcare provider seeking a reasonable accommodation based on her injuries. *See id.* ¶¶ 84-88. Specifically, Plaintiff requested to work on light duty only, with "no pushing, pulling, or lifting [of] over 10 pounds." *Id.* ¶ 84. Plaintiff's request for reasonable accommodation was formally denied by H+H employee Nicole Phillips on January 5, 2016. *Id.* ¶ 89. According to Phillips, denial was appropriate given that Enyia's "current work restrictions prevent her from being able to perform her essential functional duties in her capacity as Staff Nurse in the Comprehensive Psychiatry Emergency Department (CPEP)." *Id.* ¶¶ 89.

Plaintiff submitted a Verified Notice of Claim to the New York City Office of the Comptroller on August 6, 2015 against H+H, alleging, among other things, that she had (1) been discriminated against based on her gender, and (2) retaliated against for "complaining and raising concerns with regard to" hospital management and patient safety, as well as for "complaining about Respondent's acts of harassment, improper treatment, and humiliation." Dkt. 67, Ex. SS.

On March 8, 2016, Plaintiff filed a Complaint of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and discrimination based

on gender, national origin, and disability. *See* Dkt. 67, Ex. RR. In her EEOC complaint, Plaintiff alleges that she was first retaliated against on or about December 2011 when she "raised concerns about the conditions of the Unit at work and patients' safety at Harlem Hospital Center, which triggered a marginal performance evaluation in retaliation to her complaints, and continued until the current time." *Id.*

On June 2, 2016, H+H and Enyia signed a second stipulation of settlement, this time with respect to the December 17, 2014 disciplinary charges. *See* Dkt. 67, Ex. Z. Under this stipulation's terms, Plaintiff "accept[ed] the disciplinary penalty of five (5) days unpaid suspension [and] [Plaintiff] agree[d] to attend sensitivity training as directed." *Id.* She also agreed to release H+H and "the Facility [Harlem Hospital] from any and all claims or rights of action, whether at law, in equity, or in any proceeding … in [the] future in connection with the facts forming the basis of the underlying dispute raised." *Id.* In return, Plaintiff was restored "the balance of the suspension without pay served in the case in excess of the five (5) days suspension." *Id.*

## II. Procedural History

On August 10, 2016, Enyia filed the instant action against H+H, Harlem Hospital, Michelle Blackburn, and Nancy Cook in their official capacities, and various John Does. Dkt. 1.

In her complaint, Plaintiff brought several claims. First, Enyia alleged that Defendants violated New York's retaliation statute at 5 U.S.C. § 2302, *et seq.*, and the New York Whistleblower Act, Labor Law § 740, *et seq.* Am. Compl. at 10-11. Second, Plaintiff contended that Defendants unlawfully discriminated and retaliated against her based on her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL"). *Id.* at 12-15. Third, Enyia alleged that Defendants intentionally created a

hostile work environment in violation of Title VII, the NYSHRL, and the NYCHRL. *Id.* at 15. Finally, Plaintiff brought a failure to accommodate claim against Defendants for her work-related injury pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the NYSHRL, and the NYCHRL. *Id.* at 16-18.

On November 1, 2016, Defendants filed a partial motion to dismiss all of Enyia's complaints save for her failure to accommodate claim. Dkt. 9. Plaintiff subsequently filed a first amended complaint in which she removed her 5 U. S. C. § 2302, *et seq.* retaliation claim, but left her complaint otherwise the same. Dkt. 14. On January 17, 2017, Defendants filed a motion to partially dismiss the first amended complaint, Dkt. 21. Plaintiff filed her opposition to this motion on January 31, 2017, Dkt. 23, and Defendants replied on February 7, 2017, Dkt. 25.

On July 7, 2017, the Court granted in part and denied in part Defendants' motion to dismiss the first amended complaint. *See* Dkt. 27. Specifically, the Court granted Defendants' motion with respect to Plaintiff's hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL as to all the defendants; the failure to accommodate claim under the ADA as to Defendants H+H and Harlem Hospital; and Plaintiff's retaliation claim under the New York Whistleblower Act against Defendants Michelle Blackburn and Nancy Cook. *Id.* The Court denied, however, Defendants' motion to dismiss Plaintiff's gender discrimination and retaliation claims under Title VII against H+H and Harlem Hospital; Enyia's gender discrimination and retaliation claims under the NYSHRL and the NYCHRL against all the defendants; Enyia's whistleblower claim as to H+H and Harlem Hospital; and Plaintiff's failure to accommodate claims under the NYSHRL and the NYCHRL against all the defendants. *Id.*

On August 9, 2017, Defendants filed an answer to the first amended complaint. Dkt. 28. On November 20, 2017, following failed mediation and settlement attempts, the parties proceeded to discovery. Dkts. 43, 63.

Defendants filed the present summary judgment motion on March 7, 2019, Dkt. 66, Plaintiff responded on May 3, 2019, Dkt. 74, and Defendants replied on June 6, 2019, Dkt. 80.

## STANDARD OF REVIEW

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]he moving party bears the burden of demonstrating the absence of a material factual question." *VW Credit, Inc. v. Big Apple Volkswagen, LLC*, No. 11-CV-1950 (PAE), 2012 WL 5964393, at *2 (S.D.N.Y. Nov. 29, 2012)). "[I]n making this determination, the court must view all facts 'in the light most favorable' to the non-moving party." *Id.* (quoting *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010)).

If the moving party meets its burden, "the party opposing summary judgment can defeat the motion for summary judgment 'only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial.'" *Id.* (quoting *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009)) (brackets in original). In other words, "[t]he movant has the burden of showing that there is no genuine issue of fact, but the [nonmoving party] is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256. Rather, "the [nonmoving

party] must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 257.

## DISCUSSION

Defendants argue they are entitled to summary judgment on each of Enyia's claims. First, Defendants contend that Enyia is bound by the terms of the June 2016 stipulation of settlement, which released all claims against Defendants except for her reasonable accommodation claim. *See id.* at 1-2. Second, Defendants assert that Plaintiff's whistleblower claims are both time-barred and deficient. *Id.* Third, Defendants argue that Plaintiff's Title VII, state, and city discrimination and retaliation claims lack merit because she has not shown that "the actions of which she complains were motivated by her gender," and Defendants have "articulated ample, consistent, non-retaliatory and non-discriminatory reasons for their actions." *Id.* at 20. Finally, Defendants contend that Enyia's reasonable accommodation claims fail because she cannot demonstrate she had the ability to perform the essential functions of her job with an accommodation. *See id.* at 3.

The Court agrees with Defendants that Plaintiff's Title VII gender discrimination and retaliation claims against them fail as a matter of law, and declines to exercise supplemental jurisdiction over her state law claims.

## I.   Plaintiff's Title VII Gender Discrimination Claim[1]

Plaintiff alleges that H+H and Harlem Hospital discriminated against her on the basis of her gender in violation of Title VII. Specifically, Plaintiff contends that her negative performance evaluations, subsequent placement on performance plans, transfer to other units, and suspensions

---

[1] The Court does not address Defendants' argument that the 2016 stipulation of settlement bars the majority of her claims since it finds that, at least with respect to her Title VII claims, Plaintiff does not succeed on the merits. In any event, the 2016 settlement only relates to events that occurred before December 17, 2014. In bringing this action, however, Plaintiff alleges instances of adverse employment actions that postdate December 17, 2014, such as, for example, her March 2, 2015 negative performance evaluation. *See supra.* at 5; Dkt. 67, Ex. V

constitute adverse employment actions, and that these adverse employment actions provide evidence of gender discrimination because Defendants treated similarly situated male employees more favorably than her. *See* Pl.'s Opp. at 19.

As an initial matter, because Harlem Hospital "is merely a facility within [H+H], it [] lacks the capacity to be sued." *Ayala v. Bellevue Hosp.,* No. 94-CV-1551 (WHP), 1999 WL 637235, at *3 (S.D.N.Y. Aug. 20, 1999); *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 288 (S.D.N.Y. 2006) ("As a facility owned and operated by [H+H], Coler/Goldwater may not be sued in its independent capacity."); *see* N.Y. Unconsol. Laws § 7385(1); New York City Charter § 396. This leaves Plaintiff's discrimination claims against H+H.

Title VII prohibits discrimination against an employee on the basis of "race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). "To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting laid out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). Accordingly, the plaintiff must demonstrate: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010).

If the plaintiff meets her initial burden under the *McDonnell Douglas* standard, the burden then shifts to the defendants to "offer a legitimate nondiscriminatory reason for the termination." *Id.* at 492. If the defendants are able to do so, the burden shifts back to the plaintiff to demonstrate that her gender was the real reason for her adverse treatment. *See id.*

Here, it is undisputed that Enyia is a member of a protected class and that she was qualified for her position as a registered nurse. Defendants also do not dispute that Enyia's negative performance evaluations and her subsequent transfer to other units, as well as Plaintiff's suspensions, would qualify as adverse employment actions, and the Court therefore assumes that this prong has been met. *See Sanders v. N.Y.C. Human Resources Admin.*, 361 F.3d 749, 756 (2d Cir. 2004) (a negative evaluation may constitute an adverse employment action where this had effects "on the terms and conditions of [one's] employment"); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 355-56 (S.D.N.Y. 2006) ("Plaintiff's ten-day suspension is an adverse employment action, as it is a material alteration of Plaintiff's working conditions.").

She is, however, unable to establish any circumstances giving rise to an inference of gender discrimination. Plaintiff, for example, points to no overt remarks or actions that give rise to such an inference.[2] Instead, she argues that she faced disparate treatment compared to three male employees, Ray King, Leslie Gertz, and one "Mr. Webster." Pl.'s Opp. at 19. This is based on Plaintiff's testimony that: (1) Ray King was suspended for a lesser period than her even though he committed a similar (unspecified) infraction to Enyia, *see* Enyia Deposition, Dkt. 77, Ex. 2, 113:13-114:4; (2) unlike her, Leslie Gertz was not disciplined or reprimanded by Cook following his alleged reinsertion of a needle into a patient, *see id.* 114:8-115:12; and (3) "Mr. Webster" had issues with "clothing and contraband" but was not "written up" for this, *see id.* 115:13-22.

---

[2] In her briefing, Plaintiff makes much of the fact that, in her deposition Cook stated that, sometime in 2014 or 2015, she told Plaintiff "I'm sorry that I'm discriminating against you but that's not, you know, what I'm here for." Pl.'s Opp. at 19. Based on the context in which this statement was made, however, it is clear that Cook was apologizing to Enyia for her *belief* that Cook was discriminating against her. Cook Deposition at 187:5-23. Indeed, Cook also states that she told Enyia that she was "not [t]here to bully or harass anyone" and that she "[didn't] know why [Enyia] fe[lt] that [she was] retaliating against her." *Id.* at 187:8-16. In any event, even accepting Cook's comments at face value, Cook did not specify, nor is it at all apparent from her testimony, what this discrimination consisted of or if it had anything to do with Plaintiff's gender.

To show disparate treatment among similarly situated employees, "those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001). Such "individuals with whom [Plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Serv.*, Inc., 118 F.3d 60, 64 (2d Cir. 1997) (internal quotation marks omitted). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz*, 609 F.3d at 493-94 (internal quotation marks omitted).

Plaintiff provides no evidence demonstrating that she was similarly situated to Ray King, Leslie Gertz, or "Mr. Webster." Although Plaintiff contends that King was suspended for a lesser period than her for a "similar infraction," she does not specify what this infraction entailed. As for Gertz, Plaintiff provides no support for her claim aside from own testimony that this individual improperly reinserted a needle into a patient but was not disciplined. Finally, nowhere in her complaint or testimony has Enyia asserted that, akin to "Mr. Webster," she was "written up" or penalized for issues with "clothing and contraband."

Any inference of gender discrimination is further undermined by the fact that Cook and Blackburn, the only individuals that Plaintiff has alleged to have discriminated against her, are both women. *See, e.g.*, *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 501 (S.D.N.Y. 2010) ("Any inference of sex discrimination is further undermined by the fact that Medina, the supervisor who allegedly discriminated against Walder as to the terms of her duties, is a woman."); *Fosen v. N.Y. Times*, No. 03–CV–3785 (KMK)(THK), 2006 WL 2927611, at *5 (S.D.N.Y. Oct. 11, 2006) ("Any inference of discrimination was also critically undermined by the fact that the

supervisors responsible for Plaintiff's termination and transfer were both women."); *Zuffante v. Elderplan, Inc.*, No. 02 Civ. 3250 (WHP), 2004 WL 744858, at *6 (S.D.N.Y. Mar. 31, 2004) (noting that invidious discrimination is all the more unlikely when, inter alia, the decision-maker is in the same protected class as the plaintiff).

Even assuming that Plaintiff could establish a prima facie case of gender discrimination, however, she has made no showing that Defendants' proffered non-discriminatory reasons for her negative performance evaluations, placement on a performance plan, transfer to other units, or suspension were pretextual. From 2010 through 2016, Plaintiff received consistently unsatisfactory marks on her performance evaluations due to her negative confrontations with colleagues and for endangering patient safety. *See supra.* at 2-6. Although Plaintiff, in response, contends that she received uniformly positive evaluations before 2010—when Blackburn arrived at the hospital—courts in this Circuit have made clear that "demonstration of past positive performance is insufficient to raise a genuine issue of disputed fact with respect to pretext." *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 577 (S.D.N.Y. 2010) (internal quotation marks omitted); *Iverson v. Verizon Commc'ns*, No. 08 Civ. 8873 (SAS), 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) (holding that past praise of the plaintiff's performance was insufficient to contradict documented records of poor performance and thereby establish pretext); *see also Orisek v. Am. Inst. of Aeronautics and Astronautics*, 938 F. Supp. 185, 191 (S.D.N.Y. 1996) ("A new manager is allowed to appraise an employee's work according to his or her own expectations, even if those expectations are contrary to a prior manager's expectations.") (internal quotation marks omitted).

The many staff complaints levied at Plaintiff further support Defendants' contentions that they acted with legitimate, non-discriminatory reasons in taking adverse actions against her. In

particular, Defendants have produced numerous statements from her co-workers that she endangered patient safety, hampered workplace collegiality, and in certain instances even threatened them. Such complaints were made by several different colleagues on several different occasions. *See supra.* at 1-7 (Howell and Stinson complaint that Enyia refused to administer care to a patient); (Reyes complains about Enyia's lack of professionalism and her attempts to intimidate colleagues); (Cook complaint that she had received multiple complaints from different staff members about Enyia and her abusive language towards patients); (Cook complaint that Enya had physically threatened her).

Such complaints constitute non-discriminatory reasons for the adverse employment actions taken against Plaintiff. *See Goonewardena v. N.Y. Workers Compensation Bd.*, 258 F. Supp. 3d 326, 338-39 (S.D.N.Y. 2017), *aff'd by* 17-2234, 2019 WL 5092442 (2d Cir. Oct. 11, 2019) (citing complaints about errors in the plaintiff's written work, his difficult relationship with his colleagues, his difficulty in following instructions, and his difficulty communicating as legitimate, non-discriminatory reasons for his termination); *see also Ya–Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 74–75 (2d Cir. 2015) (citing an employee's lack of "collegiality" as a legitimate basis for an employer's adverse decision); *Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. App'x 122, 126 (2d Cir. 2012) (summary order) ("The defendants ... proffered legitimate, nondiscriminatory reasons for [an employee's] discharge, namely that: (1) he spoke to his coworkers and his supervisor in an unprofessional manner; (2) he failed to complete projects assigned to him; (3) he did not work well with others, particularly on team projects; (4) he did not communicate well; and (5) he failed to follow instructions and often deviated from assigned tasks and questioned the work of others, while failing to complete his own."); *Nieblas–Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 66 (S.D.N.Y. 2016) ("Defendants have plainly put forward legitimate, non-discriminatory reasons for

his termination: namely, that Plaintiff resented receiving instructions from his supervisors, refused to perform certain assignments, was the subject of complaints ... and was repeatedly confrontational with, even threatening to, his supervisors.").

In response, Plaintiff simply asserts that Defendants and other staff members fabricated these complaints about her. *See* Pl.'s Opp. at 19; *see* Enyia Deposition, Ex B, at 98:5-99:4, 48:22-49:1. But Enyia supports this contention that Defendants and other staff members conspired to destroy her career with no evidence other than her own statements that this conspiratorial conduct occurred on the basis of her gender. A plaintiff's conclusory assertions that "complaints about h[er] work performance were nothing more than a pretext to terminate [her] ... is not a viable basis for a discrimination claim." *Hu v. UGL Servs. Unicco Operations Co.*, 13 Civ. 4251 (LGS), 2014 WL 5042150, at *6 (S.D.N.Y. Oct. 9, 2014) (internal quotation marks omitted); *see Iverson*, 2009 WL 3334796 at *5 (The plaintiff's "own conclusory statements are the only other evidence he provides to show that Verizon's proffered reasons were merely a pretext for discrimination. As a matter of law, such statements are insufficient to establish pretext.").

Accordingly, because Plaintiff has failed to show that Defendants' actions were motivated by discriminatory animus, or the legitimate, non-discriminatory reasons for the adverse employment actions taken against her were pretextual, Defendants are entitled to summary judgment on her Title VII gender discrimination claim.

## II.     Plaintiff's Title VII Retaliation Claim

Plaintiff also alleges that H+H and Harlem Hospital retaliated against her in violation of Title VII. Specifically, Plaintiff argues that the adverse employment actions taken against her were the result of her complaints about gender discrimination. *See* Pl.'s Opp. at 22-23.

Title VII makes it unlawful for "an employer to discriminate against any [employee]…because [s]he has opposed any practice made an unlawful employment practice … or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C.A. § 2000e-3(a)(1). For Plaintiff to establish a prima facie case of retaliation she must show: "(1) that she participated in an activity protected by Title VII; (2) that her participation was known to her employer; (3) that her employer thereafter subjected her to a materially adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct[,]" or "(2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

The *McDonnell Douglas* burden shifting framework also applies with respect to retaliation claims. *See Kaytor*, 609 F.3d 537 at 552. "At the summary judgment stage, if the plaintiff presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action." *Id.* at 552-53. "If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a substantial reason for the adverse employment action." *Id.* (internal quotation marks omitted).

Plaintiff has not provided sufficient evidence to suggest that she was retaliated against for her complaints of gender discrimination in violation of Title VII. As an initial matter, it is unclear when Plaintiff first complained of such discrimination. *See* Enyia Deposition, Ex. 77-2, 125:15-22 ("I don't remember the date."); Pl.'s 56.1 Counterstatement ¶ 172 (stating that, on March 4 2015, Enyia submitted a written complaint to Defendants and Human Resources that she had been discriminated against, but not specifying whether this was on account of her gender). Indeed, Plaintiff has not pointed to anything in the record demonstrating that she complained about gender discrimination prior to filing her August 6, 2015 Verified Notice of Claim, *see* Dkt. 67, Ex. SS, which was submitted after the majority of adverse employment actions were allegedly taken against her. *See supra.* at 1-8; *see Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (In order to succeed on a retaliation claim, there must be "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

In any event, Enyia fails to provide any evidence, apart from her own conclusory testimony, that she was given negative performance reviews or suspended because of her complaints that she was discriminated against based on her gender. *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir 2004) ("[A] plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link."); *see also Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 364 (S.D.N.Y. 2006) (A plaintiff's retaliation claim does not succeed where "she provides no direct evidence to support [her] claim other than her own conclusory testimony"). Finally, even if Enyia could successfully establish a prima face case of retaliation, for the reasons described earlier, *supra.* at 14-17, Defendants have offered legitimate, non-retaliatory reasons for the adverse employment actions taken against her and Plaintiff has failed to provide any substantive evidence that such reasons

were pretextual. *See Cunningham v. N.Y. State Dep't of Labor*, 429 F. App'x 17, 19 (2d Cir. 2011) (summary order) ("[B]ecause [the defendant] advances a legitimate, non-retaliatory reason for [the plaintiff's] docked pay and his other allegations and because [the plaintiff] offers nothing more than his own conclusory allegations to challenge this reason or meet his ultimate burden of proving retaliation, we affirm the district court's grant of summary judgment on this claim.").

Defendants are therefore entitled to summary judgment with respect to Plaintiff's Title VII retaliation clam.

## III.    Plaintiff's State Law Claims

Because the parties in this action are not diverse, this Court has jurisdiction over this action only by virtue of Plaintiff's federal claims. *See id.* §§ 1332(a), 1331. Pursuant to 28 U.S.C. 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental "if it has dismissed all claims over which it has original jurisdiction." "In determining whether to continue to retain jurisdiction, district courts consider factors such as judicial economy, convenience, fairness, and comity." *Anegada Master Fund, Ltd. v. PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 625 (S.D.N.Y. 2010). Here, those factors weigh in favor of declining jurisdiction and dismissing Enyia's state law claims. *See, e.g., Hsueh v. N.Y.S. Dep't of Fin. Servs.*, 15 Civ. 3401 (PAC), 2017 WL 3671179, at *8 (S.D.N.Y. Aug. 25, 2017) ("Because the Court grants the [defendant's] motion for summary judgment on Hsueh's sole federal-law claim, the Court declines to exercise supplemental jurisdiction over Hsueh's state-law claims."); *Thomas v. Ariel West*, 242 F. Supp. 3d 293, 306 (S.D.N.Y. 2017) (granting summary judgment dismissing plaintiff's federal claims and "declin[ing] to exercise supplemental jurisdiction [over the] Plaintiff's state- and city-law claims relating to those alleged violations"). The Court does so without prejudice.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted.

The Clerk of Court is respectfully directed to terminate the motion at docket number 66 and to close this case.

Dated:    October 18, 2019
          New York, New York

Ronnie Abrams
United States District Judge